Good morning, ladies and gentlemen. The clerk may call this morning's case. 143896, Batsmata Kanu v. Loretta Lynch. Arguments not to exceed 15 minutes per side. Mr. Piston for the petitioner. Good morning, Your Honors. I'd like to reserve five minutes for rebuttal. You may. Okay, Your Honors, this case presents two major factual and two important legal issues. The major factual issues are first, would any reasonable adjudicator find the government has proven by clear and convincing evidence that Ms. Kanu was married when she was admitted to the United States as a child of a refugee? And second, is there substantial evidence to support the conclusion that Ms. Kanu's asylum application, even as that term was broadly interpreted by the agency, contained deliberate material fabrications? As will be shown, the answer to both of these questions is no. The claim that Ms. Kanu was married when she came to the U.S. Counsel, counsel, you just said would any reasonable fact finder find that she was married, but wouldn't our standard be that that any, i.e., every fact finder would have to find that she was not married? You're right, Your Honor. Okay. I misspoke. The claim that Ms. Kanu was married when she came to the U.S. is completely based upon Ms. Kanu's uncorroborated out-of-court statements, which cannot carry the government's burden of proof, since the immigration judge emphatically and repeatedly held that Ms. Kanu is not a credible witness. And it is well settled that incredible testimony is insufficient to establish a fact, even by a preponderance of evidence, much less the clear and convincing evidence required to establish Ms. Kanu's deportability. I come in the kind of unusual position of a litigant who's relying on the incredibility of your client's testimony. Your Honor, that's all the government's got going for it. They have absolutely nothing in this case other than the claim, other than to ask this court to determine that Ms. Kanu was telling the truth when she said she was married, when they've gone and called her a liar every way, which way. They rely on what she said? Pardon me? They rely on what she said? The question is why do they have the right to rely upon those things that they want to agree with and disregard everything else and offer no explanation? Don't juries and fact-finders do that all the time. People say you're lying about this, but you're not lying about that. The fact that a witness is incredible about some things doesn't mean they're incredible about everything. Isn't that sort of commonplace? It's true enough, but an immigration judge is different from a jury. An immigration judge must give a rational explanation for his decisions. A jury doesn't. What about the marriage certificate? The judge properly rejected the marriage certificate as unauthenticated and discarded it and refused to consider it. As the judge said, and as a matter of fact, later on Ms. Kanu produced a document from the Gambia saying in fact there was no record of her marriage on file. And as the judge said, I don't believe any documents coming from Gambia, and he refused to consider it and excluded it from evidence. So it's your position that any immigrant coming in through derivative status can tell a lie and then that lie cannot be used later in removal. I'm struggling with what standard you're asking us to create and whether you have any case law that would suggest that a finding of incredibility cannot be used in determining later immigration issues. It is certainly well established that an immigration judge and the Board of Immigration Appeals must have some rational basis for its decision. Here we've got Ms. Kanu saying, I'm married to Mr. Bandu. Here we've got Ms. Kanu saying, Mr. Bandu's here saying, I'm not married to Bandu. And here we've got the immigration judge saying, I don't believe a word Ms. Kanu says. Well, does he say I don't believe a word he says? Okay, he says you didn't find him. You had to be there in court to know Judge Newbery. That's what he said. Well, that's a separate issue, but I mean, to the extent that you're just saying they believe some things and not believed others, that doesn't seem terribly persuasive unless there's a logical connection between specific things that the judge did not believe and the things that the judge, as you say, had to believe and that, again, any fact finder would have to find on your side that we're not a jury where if you convince us you're okay, you've got to convince us that no reasonable fact finder could believe the immigration judge. What I would like to convince this court of is that the immigration judge offered no rational reason for choosing, first of all, number one, very importantly, the judge never said he believed Ms. Kanu's out-of-court statements. And if you read this decision, you'll find that my characterization of Judge Newbery's opinion of the respondent is supported by his decision. But she was either married or she wasn't. That's right. I'll agree with that. We certainly can. The district, or the immigration judge, if faced with conflicting statements by your client, can't conclude that one is the right answer? Your Honor, if he offered... Because if he did, you would say, well, the person is incredible because she said two different things and she also said the other, so you can't come to conclusion one as opposed to conclusion two. He never addressed the issue of... He made a finding, didn't he? The only... You can deduce from his decision that he must have believed her when she said that she wasn't married, but the only thing you'll... I don't know whether you have to say believe or not. I mean, he obviously didn't have much confidence in her credibility, but he can come to a conclusion as to whether she was married or not, and clearly she was married or not. Right? I mean, she was either married or she wasn't. The judge offered no rational explanation for claiming... He knows she was married or not, and she sees she's prevaricating, and he just evaluates that the prevarication is over here rather than over here. Well, Your Honor, you're reading a lot into Judge Newbery's opinion, because if you read his opinion, all you'll find is that Judge... Ms. Kanu is a liar, therefore she loses. That's pretty much a summary of Judge Kanu's... Judge Newbery's opinion. He seems to say that she did affirmatively say that she was married, not just in some out-of-court statements, but on documents, didn't she, on her adjustment application? She did, and then she stated in many other occasions that she wasn't married under oath, under oath in her immigration proceedings, and also, by the way, if you look at the notes of the USCIS examiner who examined her, from her notes, you can derive the fact that as soon as she came in, she told him, told the examiner, that in fact, she wasn't married to Mr. Bundu. So here we've got a person who says a couple of times, I was married to Mr. Bundu. Many, many times, I was... ...sworn papers with the government that she is married. Just as her testimony that she wasn't married is also sworn. I mean, so you're sort of like Schrodinger's immigrant, that she's married or not married, depending on what's useful to her at any given time. I'm not defending Ms. Kanu's credibility. I, standing here today, as her lawyer, have no idea whether she was married or not. The point is neither did the immigration judge. Nobody, neither does anybody, other than Ms. Kanu herself, and we can't trust what she says. And the question here is where the facts are not clear, the party with the burden of proof loses. And here the government had the burden of proving by clear and convincing evidence that Ms. Kanu was married when she came to the United States, and they have nothing but the statements from a person who will say whatever she feels is appropriate to that situation. Ms. Kanu, they effectively made Ms. Kanu their witness and placed their whole case on her, but they never offered any explanation of why, despite saying that this woman is a liar, that they would choose to believe part of her testimony, but not. Now this contrast varies. I had a similar case before this court, a case called King versus Holder, probably, in which we had a similar situation, in which a person who, two men who had lied for long periods of time to the government, decided to go truthful and therefore testified at length that one of them had, in fact, entered into a fraudulent marriage. But here, the Judge Hacker, in that particular case, offered very specific reasons. She analyzed their testimony and offered very specific reasons of why she believes them now, even though they were saying a completely different story in the past. There's none of that from Judge Newbery. I think we understand your argument. I have a question which may not be here nor there, but I am curious. How did she get from Sierra Leone to the Gambia? She fled. She what? She fled. She ran through the jungle. Well, but I mean, the countries don't border each other. Your Honor, that never came up in the trial. All she testified to, and her mother testified to... Strange. You know, she left one country and went to the other. Did she fly? Did she take a boat? Did she crawl all the way through Senegal? According to her testimony, her mother's testimony, they walked. They walked? That's her testimony. Your Honor, there are many other issues, as I mentioned. I hope you will. I know you have read my brief. You're aware of, among other things, our argument that... You'll have your five minutes for rebuttal. Thank you very much. May it please the Court, Stratton Strand, on behalf of the government. If I may begin by addressing the I.J.'s finding as to the misrepresentation about the marital status. The I.J. made clear that he believed the first version, rather than the in-court testimony version. There were a number of... By the first version, you mean... That's unclear. Let me start that again. He made clear that he believed the sworn statement that she had submitted to CIS when she was applying for adjustment of status. Okay, the 2005, I think. 2005, she submitted the I-485. Thereafter, she also submitted the G-325 that also said she was married and described where she was married, to whom, when, that it was a ceremony at the mosque. Then, he also believed the August 30, 2006, I-602 waiver application, where she specifically acknowledged that she lied when she was trying to obtain her refugee status and apologized for lying. And then her... That original lie was because if she were married, then she couldn't get derivative status based on her mother. Correct, Your Honor. And then, he also believed the June 20, 2007 letter that she sent to CIS, reaffirming that she was married and, again, apologizing for having lied. And the suggestion has been made that the I.J. simply didn't explain, that he just said, I don't believe anything and, therefore, she loses. That's not at all the case. The I.J. made clear that what he disbelieved was her testimony in the I.J. hearing, where she claimed not to have been married. And he specifically said that Kanu's sworn statement in her Form I-590, her RE-3, administratively filed I-485, and her original 602 carry great weight. He thinks that the documents she filed under oath when she was seeking adjustment of status have more weight than the testimony that she's now presenting, where she backs away from that. And he specifically says that what he finds incredible is her testimony, not those documents. He says, as the record does not contain evidence other than Kanu's own incredible testimony sufficient to outweigh her I-602 waiver application, I find that she willfully misrepresented a fact. The I.J. is absolutely clear. Is your opposing counsel's statement of the burden correct? Is your burden to show by clear and convincing evidence that that's the case? Yes, it absolutely is. And the I.J. specifically found that the DHS had carried that burden, as did, by clear and convincing evidence, as did the Board. And, of course, on appeal, the question, as Judge Boggs' question suggested, is whether the petitioner has shown that no reasonable fact finder could have so found. So found by clear and convincing evidence. Yes. My opponent hasn't said anything about the frivolousness argument. And we're prepared to rest on our brief on that, unless your honors have it. Is it frivolous simply because she lied repeatedly? Or what is the standard that makes it frivolous as opposed to just bad? It has to be a deliberate fabrication. And, of course, with respect to the frivolousness finding, we're talking about her claim that her loss of hearing was related to the supposed gunshot. And there are specific procedural protections in place before an I.J. can reach a frivolousness finding. The I.J. has to give the petitioner notice of the consequences that occurred here. The I.J. has to make a specific finding of frivolousness. He did so here. There has to be sufficient evidence in the record to support that finding. The evidence is that she lied about her hearing? The evidence is that there was quite a bit of evidence. The I.J. and the board relied on the inconsistencies between her version about what happened. She claimed that a gun went off near her ear. Her mother's various versions of it. The mother at first said that a bullet fragment entered her ear. Then the mother backed away and said it was the sound. Based on cases I've seen over the previous years, we see those kinds of discrepancies all the time where they don't result in a frivolous determination. Isn't that fair to say? I mean, there's all kinds of, you know, we thought the persecution, we thought there were two persecutors. And they say, no, there were three in the room. And one of them was crying. And the other one says the other one was happy. And, you know, we'll defer to the agency. But we don't, the agency doesn't typically say it's frivolous based on those kinds of discrepancies. Is that fair, is this sort of more egregious? Or it just happens that this is the one where they decide to clamp down? I agree with Your Honor that an adverse credibility determination doesn't always result in a frivolousness finding. The question is whether the I.J. decides to make those specific findings. As the Board stated in matter of B.Y., both the adverse credibility and the frivolousness determinations are based on identification of inconsistencies and discrepancies in an asylum claim and the consideration of any explanations offered for those. Is the frivolous determination solely based on the hearing, on the ear problem? Or is it also based on the business about saying different things about whether she was married? It's just based on the ear problem. And if I may, there was much more than just the inconsistencies. The I.J. laid out a long list of evidence that he considered when making this determination. It was the inconsistencies in the testimony, it was the medical exam that was conducted in the Gambia before she left the Gambia where the doctor said that her hearing was normal. After he... Was it marked a box? Well, there was an exam where the doctor checked normal for ears and hearing. Then the I.J. raised this concern at the end of the February 26, 2009 hearing. The real problem is that they stood on the record. Absolutely, Your Honor. He raised his concern. He said, I have a concern about your explanation for how you got this hearing problem. And here's my concern. You and your mother tell different stories. The medical records from the Gambia say no problems. Please explain this to me. I'm going to give you an opportunity to do that. They then submit, petitioner submits to respond to that concern, the Michigan Ear Institute records where she was treated, diagnosed and treated at the Michigan Ear Institute. And those records, in fact, further undermine her claim that her hearing loss was related to the supposed incident with the rebels. The forms reflect... They may not undermine it, but they don't include it. There was no statement that there was an injury, and they say that she had ear infections as a child. But I'm not sure that because she had some problems as a child, it necessarily implies that she didn't also have an injury. There's more to those records than that, however. There is the statement, the specific statement, that she suffered no serious injury. It's not a failure to mention it. There's a box checked, no serious injury. She's there for a diagnosis. You'd think that she would be telling the truth when she explains to them what the problem is. Not only that, on three separate occasions in that very record, it says that she has never suffered any noise exposure. Any noise exposure. And the supposed problem is that the gunshot went off next to her ear. Not only that, it says that she has had ear infections all her life. And the diagnosis is chronic otitis media, which is chronic inflammation and inflection from infections. And then again, the IJ, having received this supposed explanation, questions her about it and says, wait a sec, this seems to suggest that this didn't happen. This is ear infections. What can you tell me about this? This is now at the March 2011 hearing. And he says, look, this is your last chance to explain this to me. I'm really concerned that this is made up. And here are the reasons. And please, this is your chance. Tell me anything else about this. She talks to her lawyer. 11 minutes later, comes back and says, I stand on the record. So the court relied not just on all the inconsistencies, the conflicting documents, but also, he specifically mentioned, it's her failure to offer any explanation when I ask her about these inconsistencies. And also, of course, he relied on her demeanor, which he found to be evasive, inconsistent. Is there a language barrier issue going on in this case? She's got an interpreter there. The interpreter speaks her specific dialect. There's no claim during any of these hearings. There's no claim that's been made. There's no claim that. Because we see records that have interpreters with some regularity. And translations subsequently indicate that there was a lack of success in appropriate translation. But there's no such claim here. No suggestion from the record or claim. Do you have any input on my probably irrelevant question about how she got from one country to the other? She claims that they first went through Guinea. And from there, they ended up in the Gambia. That's all the record. Guinea doesn't border on the Gambia. So there's no... It's a little bit of Senegal. But it's pretty much of a straight line. And of course, the IJ here didn't believe she was from Sierra Leone. Part of his adverse credibility finding was, you haven't shown to me that you're even from Sierra Leone. He disbelieved that. She didn't have any documents that related to Sierra Leone? The explanation for it is... That's not before the court right now. But the IJ lays out quite extensively in his opinion and credibility what the basis for that is. She came from the Gambia, though, to the United States. Yes. That's where she obtained her derivative refugee status. And if I could just add one further response to Your Honor's question about, how do we get from adverse credibility to frivolousness? This court in the Siraj case from 2007 upheld an adverse credibility determination on very much the same grounds. There, there was a question of whether the person who claimed to have been persecuted was persecuted because he was listening to prohibited radio stations. And the grounds that... And by the way, on the frivolousness finding, the government has to show frivolousness by preponderance of the evidence. And here the court said the preponderance of the evidence standard was satisfied because there was an inconsistency. The radio incident was not mentioned in either of the first two applications, but it was mentioned in the third. And the only other piece of evidence that the court held was required to support the frivolousness finding was that Siraj tried to explain the admissions by blaming the translators, but indicated that he had read and approved both applications before he signed them. And this court held that evidence is under substantial evidence standard. That evidence is sufficient to support the frivolousness finding. Okay. Thank you, Counsel. Thank you. We would ask that you deny the petition. Kiston, you have five minutes for rebuttal. Your Honor, regarding the medical records, the important thing to bear in mind is who was the source of the information on those medical records at the Michigan Eye Institute? The answer is it was her mother. It wasn't Mrs. Kanu. And what do we know about her mother? Her mother isn't even literate in her own language, much less English. Her mother testified through a translator. Her mother doesn't even know when Mrs. Kanu was born. She said that she was born during the season. Why? Because only her husband has words. This is the source upon which we are asked to believe that Mrs. Kanu is a liar, because this illiterate woman checked a box that said that she never suffered serious injury. Furthermore, number two. When the IJ asked for an explanation, Mrs. Kanu was there. She could have talked about her gunshot. Could she not? Your Honor, by this time, Mrs. Kanu had been demonstrated that she was not a credible witness. And I did not want to give the judge yet more evidence for finding that she was a liar. This is the problem. That's sort of a trial tactic issue. Well, it is a trial tactic, and I stand behind it. When the judge asks for an explanation, it's not a very good response that, well,  the answer is, I don't need to give an explanation because there's nothing to explain. The source of the discrepancy is her illiterate mother. It's not her. And the source of the alleged discrepancy is answers which a woman who can't even write in her own language put on an English language form a few months after she came from Africa. Not only that, Your Honor, but the other issue regarding the events in Sierra Leone and the other, the immigration judge found Mrs. Kanu incredible solely because her testimony conflicted with her mother. And yet he found her mother incredible. So how is it that you can be found to be incredible and in fabricating your evidence solely because your testimony conflicts with somebody the immigration judge says he doesn't believe? But doesn't that lead to the conclusion that if all the witnesses are incredible, you can't make any factual finding? That is exactly... That's your position? There is no reliable evidence the party with the burden of proof loses. That should not be a controversial statement. Furthermore, the question, there's also a legal question here. The regulations speak to deliberate fabrications on the application. The Second Circuit has ruled that the asylum application is the form I-589. And this court has, in another case, affirmed that in dicta. The asylum application had none of the statements which the judge considers to be a deliberate fabrication. The asylum application did not say anything about her being shot at by rebels in Sierra Leone. Are you excluding from the asylum application any appended affidavits or sworn testimony in this argument, the argument you're making now? Judge Stranch, I think you're speaking so softly, you remind me of my loud eye out. I'm sorry. Are you excluding from the application appended sworn statements in making this argument? When you say the application did not have this information in it, are you... Yes, I am. You are? I am. So you are saying I'm looking only to the face of the application, even if the applicant has appended to the application a sworn statement? Well, I don't know if she appended with it, but at the same day that she filed that application, she did file a sworn statement. Why is that not a part of the application if she filed it with the application? Well, the short answer is it isn't. But the longer answer is that if you look at the warnings on the application, this is very interesting because the application contains two warnings of two different things. One is a warning against criminal, that you could be subject to criminal prosecution. And that statement says you can be subject to criminal prosecution if you submit an application with false statements or an affidavit with false statements. But the warning which counts in this case, the warning that you could be found to have a frivolous... That you could be found to have filed a frivolous asylum application, be barred from all immigration be found to have filed a frivolous application if your application contains false statements. So if you read this, the form itself is drawing a distinction between the application and affidavits presumably filed with the application. Has that been held or discussed in any case? No, I'm not aware of any case law discussing that, Your Honor. That appears to be a case in question. Any other questions from my colleagues? Thank you, counsel. Thank you very much, Your Honor. Case will be submitted and the clerk may adjourn court.